1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PAUL GARCIA,                              No.  2:14-cv-2266 JAM AC P

12                 Plaintiff,

13          v.                                 ORDER

14   UNKNOWN,

15                 Defendants.

16

17   I.      Introduction

18          Plaintiff, a state prisoner at Mule Creek State Prison (MCSP), proceeds pro se and in

19   forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Two matters are

20   currently pending:  (1) plaintiff's request for an extension of time within which to file a First

21   Amended Complaint, ECF No. 16; and (2) the response of the California Attorney General's

22   Office (and plaintiff's opposition thereto) to this court's order requiring a report on the conditions

23   of plaintiff's confinement, ECF No. 15, 17.  For the reasons set forth below, plaintiff's request for

24   an extension of time is granted, and the court discharges its order to show cause.

25          On May 15, 2015, this court dismissed plaintiff's original complaint with leave to file a

26   First Amended Complaint (FAC) within thirty days, ECF No. 8, and, in response to plaintiff's

27   motion filed May 12, 2015, ECF No. 7, directed the California Attorney General's Office to

28   contact authorities at MCSP and inquire into the following matters, ECF No. 11 at 1-2:

                                                  1

On May 12, 2015, this court received a letter, with exhibits, from plaintiff in which he asserts that MCSP correctional staff seized all of plaintiff's legal materials pertaining to this case, yet provided a cell search slip indicating that nothing was taken; that staff are harassing plaintiff and retaliating against him by conducting repeated cell searches, seizing and destroying plaintiff's property, and allowing other inmates to assault plaintiff; and that medical staff are refusing to disclose all pertinent information concerning plaintiff's injuries. See ECF No. 7. As the court has noted in its separate order, it appears that plaintiff is of advanced age with multiple health problems, including organic brain damage, lung tumors, diminished hearing and sight, and a learning disability. It also appears that plaintiff has required the assistance of another inmate to prepare and file matters in this court.  [¶]  In light of plaintiff's apparent medical conditions, alleged vulnerability to staff and other inmates, and lack of access to his legal materials in this action, the Office of the California Attorney General is directed to investigate plaintiff's allegations by contacting and questioning MCSP prison authorities forthwith, and to file a status report with the court.

II.     Special Appearance and Report

On June 8, 2015, Supervising Deputy Attorney General Monica Anderson made a special appearance in this case to report on the matters identified by the court.  ECF No. 15.  The response includes supporting declarations and exhibits from MCSP Correctional Sergeant F. Jacobo (Ex. A); MCSP Correctional Officer C. Johnson (Ex. B); MCSP Appeals Coordinator M. Elorza (Ex. C); and MCSP Litigation Coordinator R. Giovacchini (Ex. D).  These materials demonstrate the following:

• "Plaintiff is a Level-4 inmate with a classification score of 123, which requires him to be housed in a maximum security setting. Plaintiff is serving multiple life terms, and is housed at [MCSP], Facility A, on a General Population Sensitive Needs Yard (SNY) [which is] comprised of inmates who require additional protection from the more predatory inmate population."  ECF No. 15 at 2 (citing Jacobo Decl.).

• On February 19, 2015, in response to confidential information that dangerous contraband may be present, Facility A was placed on a modified program.  "[E]ach cell was searched and all property items were removed and placed into clear plastic bags and processed through a scanner (to detect metal or other contraband). The bags were labeled with each inmate's name, sent through the scanner, and placed back in the designated cell, if no contraband or metal was detected."  ECF No. 15-1 at 3 (Jacobo Decl., ¶ 3). Confiscated items "were electronic items such as televisions, radios, and fans. . . . [no] legal property . . .  was confiscated."  Id.

2

• On February 20, 2015, every cell in Facility A was searched, including plaintiff's cell, which plaintiff shares with another inmate. "The cell search receipt indicates that 'all items were labeled and bagged.' The items were scanned through a metal detector, and returned to the cell if no contraband was found." ECF No. 15 at 2 (citing Jacobo Decl., Attachment (Attmt.) A, ECF No. 15-1 at 6). (The receipt indicates that plaintiff's property did not include contraband but does not clearly reflect that all of plaintiff's property was returned to him.)

• On February 21, 2015, plaintiff submitted a CDCR Form 22 ("Request for Interview, Item or Service") to Officer Benavides, who forwarded the form to Sergeant Jacobo). Jacobo states that "the purpose of a using a Form 22 is to foster communication between the inmate and line staff, and to informally resolve issues," and so he "advised Garcia to address the form directly to the officers who searched his cell. I advised Garcia that the names of the officers were on the cell search receipt." ECF No. 15-1 at 3 (Jacobo Decl.). However, Sergeant Jacobo opines that plaintiff did not submit the form for review to the two officers who searched his cell. Id.

• Sergeant Jacobo states, ECF No. 15-1 at 3-4 (Jacobo Decl.) (citing Attmt. 2, ECF No. 15-1 at 7-12):

> Throughout the time I have worked on A-Facility, I have had several conversations with Garcia regarding a wide range of issues he has had on the facility. I have offered solutions to Garcia, which he chooses to ignore. In January 2015, Garcia wrote a letter to CDCR Office of Internal Affairs alleging staff misconduct on A Facility at MCSP [alleging, inter alia, that MCSP Facility A staff, allegedly acting in retaliation against plaintiff for pursuing federal civil rights litigation, were screaming at plaintiff, ignoring his low bunk chrono, ignoring his Forms 22, and ignoring when other inmates shoved and bullied plaintiff]. In his letter, he raised similar allegations against the staff on his unit, and claimed that when he wrote to the warden, he did not receive a response. [On January 28, 2015,] Internal Affairs forwarded the letter to the warden's office . . . [which] had me conduct an interview with Garcia. During the interview, Garcia stated that he had resolved his issues by using the Inmate Disability Assistance Program on the facility. . . [which] assigns inmates to assist other inmates . . . . Garcia also stated that his allegations of staff misconduct had been resolved and he no longer wished to pursue the matter. Garcia was advised by the warden [by letter dated February 17, 2015] to contact his assigned correctional counselor if he had any additional concerns or questions.

• Inmate cells are routinely searched three times per day. On June 4, 2015, at the request of the Appeals Coordinator, Officer Johnson performed a search of plaintiff's cell for the purpose of determining "if Garcia had legal material in his cell." ECF No. 15-1 at 14 (Johnson Decl.). Officer Johnson made the following observations, id. at 14-5 (¶ designations omitted):

3

During my search I observed very organized stacks of documents. The cell contains four shelves, which were filled with stacks of paper, approximately 12-inches. I also observed stacks of documents on the floor, under and up to the bottom of the shelves. These documents were in piles and secured by rubber bands and/or string. I determined that the documents contained legal work by lifting up the cover pages on approximately 4-5 stacks. I did not read the documents but saw enough to know that there were legal documents. I was in the cell probably less than five minutes. Garcia was in the dayroom while I searched his cell. He saw me exit his cell, but did not say anything to me about his property, except only to ask if I was searching his cell. I estimate that there were enough documents to fill about six boxes.

• MCSP Appeals Coordinator Elorza conducted a search of plaintiff's non-healthcare related appeals for the period February 20, 2015 to May 9, 2015. Subject to the caveat noted below, plaintiff submitted only one appeal during this period, MCSP-A-15-0790, which was screened out at the first level on March 27, 2015, due to plaintiff's failure to attach documents reflecting that he initially sought informal review (pursuant to a Form 22) of his complaints concerning the "weekly Indigent Supplies Sign-up sheets" with the Facility A Program Sergeant.[1] The caveat to this search is that there were technical problems with the Inmate/Parolee Appeals Tracking System (IATS) system during the period September 19, 2014 to March 3, 2015, which resulted in the loss of some appeals.[2] Subject to the same caveat, it appears that plaintiff did not submit any appeal during the period February 20, 2015 to May 9, 2015, alleging that his legal property was confiscated or that he was being assaulted by other inmates. ECF No. 15-1 at 17-20 (Elorza Decl.).

• MCSP Litigation Coordinator R. Giovacchini, at the request of the Attorney General's office, "researched the status of inmate Paul Garcia to determine his current housing, any possible safety concerns he may have, and whether his requests for medical care have been denied." ECF No. 15-1 at 27 (Giovacchini Decl.). Giovacchini states the following, id. at 27-8 (¶ designations omitted):

---

[1] Appeals Coordinator Elorza explains that that submitting a Form 22 "does not stay the time to file an appeal through the inmate appeals process, and an inmate is not precluded from filing an appeal with the Appeals Office prior to receiving response to the Form 22. A formal appeal may be screened out with instruction to the inmate to provide supporting documents by way of initiating resolution to their concern through the Form 22 process." ECF No. 15-1 at 18 (Elorza Decl.).

[2] Appeals Coordinator Elorza states that the IATS technical problems may have resulted in the loss of 109 appeals that were initially submitted during the period September 19, 2014 to March 3, 2015, as well as updates to 261 ongoing appeals, and the loss of completion dates for 90 older appeals. See ECF No. 15-1 at 19-20 (Elorza Decl.).

1
2
3
4
5
6
7
8
9

Inmate Garcia is appropriately housed on a Sensitive Needs Yard. I did not find any record of any attempted assaults or actual assaults as alleged by Garcia. Nor is there any record of Garcia complaining to staff of assaults by other inmates. Garcia did receive a CDCR 115 Rules Violation Report on May 5, 2015, for Behavior that Could Lead to Violence [being in a fighting stance with another inmate], a violation of CCR, title 15, section 3005(a). That rules violation is currently pending adjudication. (Attachment 1 [ECF No. 15-1 at 30].) Garcia submitted a Health Care Services Request Form on May 5, 2015, claiming he was attacked by another inmate [and that the responding officer, Griffiths, mischaracterized the incident as potential mutual combat]. Garcia was examined by medical staff on May 6, 2015, and an x-ray was taken of his right hand [results of x-ray not provided]. (Attachment 2 [ECF No. 15-1 at 32].)

10
11
12
13

As summarized by Deputy Attorney General Anderson, these several declarations provide that "although plaintiff's cell was searched, his property was returned;" that "plaintiff has not filed any inmate appeals regarding the subjects of his complaints to the court;" and that "plaintiff is appropriately housed on a sensitive needs yard." ECF No. 15 at 1-3.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff has filed an opposition to the Attorney General's report that includes copies of several Forms 22 and Health Care Services Request (HCSR) Forms submitted by plaintiff over the last several months and allegedly ignored or gratuitously granted by correctional staff. See generally ECF No. 17. The Forms 22 include complaints about plaintiff's treatment by other inmates. The HCSR Forms demonstrate plaintiff's repeated attempts to obtain eyeglasses and medications, including for treatment of petite mal seizures associated with his organic brain damage, a breathing nebulizer to treat his lung disorder, and diabetic medications and sufficient food. Plaintiff states that the refusal of correctional staff to properly process his Forms 22 left him "no way to file [exhaust] an appeal," and that many of his medical problems remain untreated. ECF No. 17 at 4. Plaintiff also states that the records in his cell observed by Officer Johnson consisted primarily of plaintiff's medical records and did not include all of his legal materials, which plaintiff still seeks. The opposition includes an affidavit by plaintiff's cell mate that attests to plaintiff's advanced age and medical problems, and to the alleged abuse of plaintiff by other inmates, particularly while showering; states that correctional staff have ignored or "bogusly granted" plaintiff's numerous written requests for intervention and assistance; and

1  asserts that Correctional Officer Griffith is retaliating against plaintiff in a "private war." Id. at

2  19.

3         While the undersigned is not entirely persuaded that MCSP correctional staff are doing all

4  they can to protect plaintiff from harassment by other inmates,[3] the undersigned is nonetheless

5  persuaded that plaintiff is sufficiently safe and supported to proceed in this action for purposes of

6  filing a FAC.  Plaintiff is housed on a sensitive needs yard, and the Forms 22 submitted by

7  plaintiff include a response from Officer Griffith that provides, "[a]s per our conversation on

8  1/27/15 . . . staff will assist you in getting access to a shower." ECF No. 17 at 12.  These

9  circumstances fall short of the extraordinary circumstances warranting preliminary injunctive

10  relief in a newly-filed action.[4]

11         Concerning plaintiff's property, the attachments to the declaration of Sergeant Jacobo do

12  not exclude the possibility that some of plaintiff's personal property was permanently confiscated.

13  Nor do Sergeant Jacobo's declaration and exhibits reference the search of plaintiff's cell on

14  March 28, 2015; the receipt for that search, brought to the court's attention by plaintiff, appears to

15  reflect the confiscation of contraband.  See ECF No. 7 at 6.  Nevertheless, despite plaintiff's

16  protestations to the contrary, the declaration of Officer Johnson indicates that plaintiff is currently

17  in possession of his legal materials.  Officer Johnson's observations, together with the omission

18  _____

19  [3]  The declaration of Litigation Coordinator Giovacchini suggests that there was no independent investigation into plaintiff's allegation that the hand injury he sustained in the RVR incident was an intentional assault by another inmate (Ortega).  Plaintiff has filed a supplemental statement

20  asserting that the reporting officer (Griffith) sought to cover up this alleged assault.  See ECF No. 14.

21  [4]  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

22  balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); see also Stormans, Inc. v. Selecky,

23  586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter).  The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature.

24  Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).  The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful

25  decision in a case after a trial on the merits.  See 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010).  An injunction against individuals who are

26  not parties to the action is strongly disfavored.  Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969).  In cases involving conditions of confinement, any

27  preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to

28  correct the harm." 18 U.S.C. § 3626(a)(2).

1    of any reference to confiscated legal materials in plaintiff's request for extension of time to file

2    his FAC (see infra), indicate that plaintiff's original allegations concerning the alleged

3    confiscation of his legal materials in February 2015, ECF No. 7, have been resolved.

4            Finally, while the declaration of Appeals Coordinator Elorza leaves open the possibility

5    that plaintiff may have filed relevant appeals during the period September 19, 2014 to March 3,

6    2015, which cannot be retrieved, it remains plaintiff's burden to demonstrate that he exhausted all

7    *available* administrative remedies on each of his claims *before* commencing the instant action.

8    Exhaustion must be attempted pursuant to the CDCR Form 602 Appeal administrative grievance

9    process, not the informal resolution process reflected on the Form 22.  The Prison Litigation

10   Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison

11   conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail,

12   prison, or other correctional facility until such administrative remedies as are available are

13   exhausted." 42 U.S.C. § 1997e(a).

14           For these several reasons, the court finds that the response of the Deputy Attorney

15   General, together with the declarations and exhibits submitted by MCSP staff members Jacobo,

16   Johnson, Elorza and Giovacchini, adequately demonstrate that plaintiff is appropriately housed

17   and supervised, with adequate access to his legal materials.  Absent the extraordinary

18   circumstances noted above, see n.3, supra, the undersigned is without authority to monitor

19   plaintiff's numerous allegations until they are set forth as cognizable claims in a FAC.  Therefore,

20   plaintiff's motion for court order, ECF No. 7, is denied.

21       III.    Plaintiff's Request for Extension Of Time

22           Plaintiff requests a 45-day extension of time to file a FAC responsive to the court's May

23   15, 2015 order.  The request, prepared by another inmate ("plaintiff's jailhouse lawyer") but

24   signed by plaintiff, recounts plaintiff's physical and mental impairments; states that plaintiff and

25   his legal assistant live in different buildings and do not go to the same yard, but have requested

26   time in the prison library; and states that plaintiff is awaiting responses to his requests for copies

27   of his medical and appeal documents.  The request does not allege the confiscation or improper

28   retention of plaintiff's legal materials.  For good cause shown, plaintiff's request is granted.

IV.     Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiff's request for extraordinary relief, ECF No. 7, is denied.

2.  Plaintiff's request for an extension of time, ECF No. 16, is granted; plaintiff shall file his FAC on or before August 14, 2015.

3.  The assistance of the California Attorney General's Office and MCSP staff is acknowledged.

DATED: June 29, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

8